1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH HUGHES,

        Plaintiff,

    v.

PUGET SOUND ELECTRICAL
WORKERS PENSION TRUST FUND,

        Defendant.

Case No.  C10-0337RSL

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
SUMMARY JUDGMENT IN
PLAINTIFF'S FAVOR

16

## I.  INTRODUCTION

17
18
19
20
21

      This matter comes before the Court on a motion for summary judgment filed by defendant Puget Sound Electrical Workers Pension Trust Fund (the "Trust").  Plaintiff, who suffers from a chronic back problem, alleges that defendant violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* by assigning an erroneous disability onset date once defendant belatedly approved his application.

22
23

      For the reasons set forth below, the Court denies defendant's motion and grants summary judgment in plaintiff's favor.

24
25
26

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 1

## II.  DISCUSSION

**A.    Background Facts.**

The Trust is a Taft Hartley Fund that operates the Puget Sound Electrical Workers Pension Plan (the "Plan").  The Plan is covered by labor agreements between participating employers and a labor union.  The Trust is administered by a Board of Trustees, which is comprised of half employer and half union representatives.

The Plan provides for disability retirement benefits for a participant who "becomes permanently and totally disabled."  PSEW 232 (Plan at 4.05).  "Retirement benefit payments under this Plan will become payable to, or on behalf of vested Participants as of the first of the month immediately following receipt of the Participant's written application requesting the commencement of such retirement benefit payments or as soon thereafter as such recipient is otherwise eligible to receive" the benefits.  PSEW 236 (Plan at 5.07).  The Plan provides that the participant is eligible for benefits "the first month following six full consecutive calendar months throughout which he has been under such disability provided application is made in accordance with Section 5.07.  Disability benefits will not be paid for the first six months of such disability."  PSEW 232 (Plan at 4.05).

In the section titled, Determination of Permanent and Total Disability, the Plan provides,

> For purposes of this Plan, permanent total disability is disability resulting from any medically determinable physical or mental impairment which can be expected to be of long, continued or indefinite duration and which will render the Participant incapable of continuing in the employment of an Employer or engaging in any other regular employment for an Employer or engaging in any regular employment or occupation substantially gainful in character which he would otherwise be expected to be capable of performing in light of his training, experience and ability.

> Disability will not be considered established until it has continued for a period of

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 2

at least six consecutive months. It shall be the responsibility of the Participant to submit proof of disability satisfactory to the Trustees, and the Trustees may require that the Participant be examined by a physician of their choice before awarding Disability Retirement Benefits under this Plan.

PSEW 249 (Plan at 7.01).

It is undisputed that plaintiff, an electrician, is covered by the disability benefits plan at issue. Plaintiff submitted his application for a disability pension in December 2007. In February 2008, plaintiff's treating physician, Dr. Debra Chaput, completed a written evaluation regarding his condition. One side of the form cited the definition of "Total and Permanent Disability" from the Plan and continued,

> While the above definition requires that an Employee be disabled from all regular employment or occupations, the Board wishes to clarify that this restriction is limited to employment activities that involve similar physical and mental capabilities with comparable or equivalent wage potential as electrical work based on the employee's training, experience, and ability. To summarize, even if an Employee is able to perform some basic, unskilled work for a minimum wage, this Plan may still consider him to be totally and permanently disabled if he is unable to perform job duties comparable to those provided previously, especially if he does not have training, education or the ability to engage in similar work for similar wages.

PSEW 121. The second side of the form contained questions to be completed by a physician. In response to the question, "In conclusion, based on your findings, do you believe that the member is disabled according to the definition given on the reverse side?" Dr. Chaput responded, "Yes, he is disabled. I don't think he needs reexamining." PSEW 122. In an employee's form, plaintiff stated that he had been disabled since May 2005, he had worked since his disability began, and identified the real estate appraisal company for whom he had worked as a trainee in October 2007. PSEW 123, 126.

Dr. Chaput also completed an attending physician's statement form that plaintiff included with his application. In that form, Dr. Chaput responded, "Yes" to the question, "Based on medical evidence, do you believe this Patient is totally and permanently

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 3

1   disabled and prevented from performing duties of his/her occupation?" PSEW 124.  She

2   responded, "No" to the question, "Based on medical evidence, do you believe this Patient

3   is totally and permanently disabled from performing the duties of any occupation for

4   which he may be qualified by training or experience." Id.  In the "Comments" section

5   regarding the latter question, Dr. Chaput wrote, "[patient] has done retraining for Real

6   Estate Appraisal." Id.  In response to the question, "Date disability commenced?" Dr.

7   Chaput responded, "5/05." Id.  Plaintiff submitted a second attending physician's

8   statement from his chiropractor, Dr. Dusty DuBois, who noted that plaintiff's symptoms

9   were improving with care.  PSEW 127.  Dr. DuBois did not check a box regarding

10  whether the patient was "totally and permanently disabled."  Instead, he wrote, "I do not

11  do impairment ratings, but I believe [the patient] can not perform duties of occupation."

12  Id.  He responded, "No" to the question of whether plaintiff "is totally and permanently

13  disabled and prevented from performing the duties of any occupation for which he may

14  be qualified by reason of training or experience." Id.

15      Plaintiff's application was denied by letter dated March 17, 2008.  PSEW 20.  The

16  letter recited the Plan's definition and stated only that the denial was based on the

17  information submitted by plaintiff and his physician.  Plaintiff subsequently appealed the

18  denial, and the trustees of the plan conducted a hearing in June 2009.  The trustees

19  decided to send plaintiff for an independent medical examination ("IME") and noted that

20  an IME was not requested earlier because plaintiff's "physician had originally indicated

21  he was not totally and permanently disabled from all gainful employment." PSEW 204.

22  Soon after the hearing, plaintiff's counsel provided the Trust with additional medical

23  records for the period of time between 2005 and 2007.

24      The IME was conducted by Dr. Tallerico, who opined that plaintiff "was able to

25

26  ORDER GRANTING SUMMARY
    JUDGMENT IN PLAINTIFF'S FAVOR- 4

1    work for a while in 2007 but has not been able to work since May 2008." PSEW 109.

2    After reviewing the results of an MRI conducted in August 2009, Dr. Tallerico finalized

3    his report and opined, "He will never likely be able to do any work; he tried light

4    duty/desk work to no avail secondary to prolonged sitting." PSEW 109. The Trust then

5    required plaintiff to attend a second hearing in December 2009. The Trust subsequently

6    granted plaintiff's appeal and awarded him benefits as of August 2009, based on the date

7    of the IME.

8         Plaintiff contends that he was entitled to benefits beginning no later than January

9    2008 because he had been disabled for over six months at that time. He argues in the

10   alternative that benefits should be awarded as of November 2008, which was six months

11   after he ceased all work. Plaintiff filed this suit after the Trust refused to alter plaintiff's

12   retirement date.

13   **B.    Summary Judgment Standard and Evidentiary Issue.**

14        Summary judgment is appropriate when, viewing the facts in the light most

15   favorable to the nonmoving party, the records show that "there is no genuine issue as to

16   any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

17   Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary

18   judgment if the non-moving party fails to designate, by affidavits, depositions, answers to

19   interrogatories, or admissions on file, "specific facts showing that there is a genuine issue

20   for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

21        All reasonable inferences supported by the evidence are to be drawn in favor of the

22   nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.

23   2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving

24   party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec.

25

26   ORDER GRANTING SUMMARY
     JUDGMENT IN PLAINTIFF'S FAVOR- 5

1   Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  "The mere existence of a scintilla

2   of evidence in support of the non-moving party's position is not sufficient."  Triton

3   Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary

4   judgment should be granted where the nonmoving party fails to offer evidence from

5   which a reasonable jury could return a verdict in its favor."  Id. at 1221.

6         In its reply memorandum, defendant moved to strike Exhibits 3 and 4 attached to

7   plaintiff's counsel's declaration.[1]  A district court's review of a determination under

8   ERISA is typically limited to the administrative record, which may be supplemented with

9   evidence relating to a conflict of interest.  See, e.g., Welch v. Metro Life Ins. Co., 480

10  F.3d 942, 949-50 (9th Cir. 2007).  Neither of the exhibits was offered to show a conflict

11  of interest, so they are stricken on that basis alone.  Moreover, Exhibit 4, which includes a

12  chart allegedly showing the Plan's practice in other cases, was not considered by the

13  Court because it lacks relevance.  The Trustees' past practices cannot modify the

14  unambiguous Plan language.  See, e.g., Bergt v. Ret. Plan for Pilots Employed by

15  MarkAir, Inc., 293 F.3d 1139, 1143 (9th Cir. 2002).  In this case, the Plan's language is

16  unambiguous.  The Court therefore considers it, rather than any extrinsic evidence, to

17  resolve the issue.

18  **C.    Analysis.**

19        The Court reviews benefit denials under ERISA de novo "unless the benefit plan

20

21        [1] Defendant properly included the request to strike in its reply memorandum, as set
22  forth in Local Rule 7.  Thereafter, plaintiff improperly submitted a sur-reply that was not
    directed towards striking material in the reply.  Local Rule 7(g) (stating that a sur-reply
23  may be filed to request to strike material in a reply memorandum "and shall be strictly
    limited to addressing the request to strike.").  Defendant then filed a response to the
24  improperly filed sur-reply, and plaintiff filed yet another sur-reply.  The Court did not
    consider any of those improperly filed memoranda.
25

26  ORDER GRANTING SUMMARY
    JUDGMENT IN PLAINTIFF'S FAVOR- 6

1   gives the administrator or fiduciary discretionary authority to determine eligibility for

2   benefits."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan

3   does grant discretionary authority, the Court reviews the administrator's decision for

4   abuse of discretion.  See Saffon v. Wells Fargo & Co. Long Term Disability Plan, 511

5   F.3d 1206, 1209 (9th Cir. 2008) (citing Firestone, 489 U.S. at 115).  In this case, it is

6   undisputed that the Plan grants the trustees discretion to determine eligibility.  PSEW 255

7   (Plan, Art. IX, 9.01) (stating that the trustees have "exclusive power and authority, in

8   their discretion, to construe the Plan and other Plan documents, determine eligibility for

9   participation in the Plan and for benefits under the Plan . . . .").

10          "Where the decision to grant or deny benefits is reviewed for abuse of discretion, a

11   motion for summary judgment is merely the conduit to bring the legal question before the

12   district court and the usual tests of summary judgment, such as whether a genuine dispute

13   of material fact exists, do not apply."  Bendixen, 185 F.3d at 942.  The only legal question

14   before the Court is whether defendant abused its discretion, or in other words, acted

15   arbitrarily and capriciously.  The Ninth Circuit has held that "[a]n ERISA administrator

16   abuses its discretion only if it (1) renders a decision without explanation, (2) construes

17   provisions of the plan in a way that conflicts with the plain language of the plan, or (3)

18   relies on clearly erroneous findings of fact."  Boyd v. Bell, 410 F.3d 1173, 1178 (9th Cir.

19   2005); see Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472 (9th Cir. 1993).

20          If a plan administrator is operating under a conflict of interest, the Court must

21   consider that conflict as a factor in determining whether the Plan abused its discretion.

22   Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008).  The Supreme Court has

23   explained that the conflict factor's weight varies depending on the facts and

24   circumstances of each case.  Id.  For example, the conflict factor "should prove more

25

26   ORDER GRANTING SUMMARY
     JUDGMENT IN PLAINTIFF'S FAVOR- 7

important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision." Id. at 117; see also Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 630 (9th Cir. 2009) (explaining that when a conflict exists, "the court must consider numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together.").

In this case, a conflict of interest existed.  Trustee Washburn, who, along with one other trustee, made the decision to deny plaintiff's benefits application, had a personal bias against plaintiff.  Trustee Hamilton, whose motives have not been questioned, testified in his deposition that Trustee Washburn "hates" plaintiff.  Hamilton Dep. at p. 16; id. at pp. 17-18 (testifying that he had heard Trustee Washburn speak negatively of plaintiff "every time Mr. Hughes [sic] name is mentioned;" he had heard him speak as negatively of only three or four of their 4,600 members).  Trustee Washburn has not denied that bias.  Moreover, although Trustee Washburn claims to have "recused" himself from the appeal, he chaired the two appeal hearings, questioned plaintiff during the June 2009 hearing, and chaired the June and December 2009 meetings when the trustees ruled on plaintiff's claim.  The fact that Trustee Washburn made the initial decision and participated in the appeal suggest a high likelihood that the bias affected the decision. The Court weighs that factor and views the Trustees' reason for delaying benefits with "enhanced skepticism."  Montour, 588 F.3d at 631.

Because the Trustees ultimately granted plaintiff's claim, the Court must determine whether they abused their discretion in beginning his benefits in August 2009.  Plaintiff contends that the Trustees abused their discretion by failing to apply their own comparable wage standard and relying on an interpretation of the Plan language that

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 8

1   conflicts with the plain language of the Plan.  "Our inquiry is not into whose

2   interpretation of the Plan documents is most persuasive, but whether the plan

3   administrator's interpretation is unreasonable."  <u>Barnett v. Kaiser Found. Health Plan,</u>

4   <u>Inc.</u>, 32 F.3d 413, 416 (9th Cir. 1994) (internal citation and quotation omitted).

5       Defendant contends that under the Plan, "disability retirement benefits start no

6   earlier than the date the Trustees have satisfactory evidence of the applicant's eligibility."

7   Reply at p. 1.  The Plan, however, is devoid of such language.  Instead, the plain language

8   of the Plan states that benefits "will become payable to . . . Participants as of the first of

9   the month immediately following receipt of the Participant's written application

10  requesting the commencement of such retirement benefit payments or as soon thereafter

11  as such recipient is otherwise eligible to receive" the benefits.  PSEW 236 (Plan at 5.07).

12  The Plan provides that the participant is eligible for benefits "the first month following

13  six full consecutive calendar months throughout which he has been under such disability

14  provided application is made in accordance with Section 5.07."  Plan at 4.05.  That

15  provision clearly and unambiguously refers to the triggering event as when the participant

16  is "under such disability."  <u>See also</u> Section 7.01 ("Disability will not be considered

17  established until it has continued for a period of at least six consecutive months.").

18      Defendant notes that under Section 7.01, the participant is responsible for

19  providing proof of disability, and the Trustees may order an IME.  The fact that the

20  participant has the burden of production, however, does not mean that he or she is not

21  "under such disability" until the Trustees determine that they have received sufficient

22  evidence.

23      Defendant also argues that it is "much more clear cut" to start benefits on the date

24  the Trustees receive satisfactory evidence of disability.  Reply at p. 4.  As set forth above,

25

26  ORDER GRANTING SUMMARY
    JUDGMENT IN PLAINTIFF'S FAVOR- 9

however, the plain language of the Plan controls, not expediency for the Plan.

Accordingly, the Court finds that the Trustees' interpretation conflicts with the clear

language of the Plan.  The fact that the Trustees relied on an expedient interpretation of

the Plan, rather than one that comports with its language and is tethered to evidence,

demonstrates that they abused their discretion.[2]

Consistent with the terms of the Plan, plaintiff should have been deemed eligible

for benefits "the first month following six full consecutive calendar months throughout

which he has been under such disability."  Plan at 4.05.  Applying that definition, Dr.

Chaput clearly opined that plaintiff was disabled as of May 2005.[3]  PSEW 122, 124.  Dr.

DuBois opined that plaintiff could not perform his own occupation.  PSEW 127.  Plaintiff

also submitted to the Trustees a vocational assessment concluding that he had no

transferrable skills to obtain other employment (PSEW 158) and a labor market summary

stating that real estate appraisers earn approximately $30,000-$40,000 per year (PSEW

164), which is undisputedly significantly less than electricians' salaries.  Dr. Tallerico,

[2] Based on the plain language of the Plan, the Court finds that the Trustees' interpretation is unreasonable regardless of the existence of the conflict of interest. Viewing the Trustees' interpretation with skepticism only highlights the fact that they abused their discretion.

[3] In its motion, defendant deprecates Dr. Chaput's opinion by stating that it is unexplained and contradictory.  A review of the form shows that the opinion is neither, but even if it had been, defendant should have, but did not, request additional information to resolve the alleged deficiency.  See, e.g., Montour, 588 F.3d at 636 (explaining that Department of Labor regulations require "plan administrators working with an apparently deficient administrative record to inform claimants of the deficiency and to provide them with an opportunity to resolve the problem by furnishing the missing information.").  The same principle undermines defendant's allegation that plaintiff failed to provide sufficient information about electrician's wages.  Defendant never requested that information, likely because the trustees were well aware of the wage rates.

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 10

who conducted the MRI, diagnosed plaintiff with "severe thoracolumbar degenerative disc disease." PSEW 109. He opined that the condition "will not improve and will likely even worsen. . . . He will never likely be able to do any work; he tried light duty/desk work to no avail secondary to prolonged sitting." PSEW 109. Nevertheless, the Trustees declined to find that plaintiff was disabled pursuant to the Plan in May 2005, based in large part on the fact that plaintiff attempted to work as a real estate appraiser. PSEW 181-183. As set forth above, the Board informed physicians that the evaluation of whether a claimant could perform alternate work was limited to activities with comparable or equivalent wage potential to electrical work. The Plan itself defines disability in terms of whether the participant can perform work that is "substantially gainful in character." PSEW 249. However, there is no evidence that the Trustees considered that factor in plaintiff's case. Even if the Court had not already concluded that the Board abused its discretion, it would so find based on its failure to apply its own standard in plaintiff's case. Under the proper standards and in light of the medical evidence, the record demonstrates that plaintiff was disabled pursuant to the Plan's definition by May 2005.

Having determined that defendant abused its discretion, the Court may grant summary judgment in plaintiff's favor and order the provision of benefits in accordance with this order. See, e.g., Montour, 588 F.3d at 637; Fed. R. Civ. P. 56(f). In this case, absent defendant's arbitrary and capricious conduct, plaintiff should have received benefits beginning January 1, 2008, the first day of the first month following his application for benefits. See, e.g., Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001) (finding that an award of retroactive benefits was appropriate when the administrator's denial of benefits was contrary to the factual record). By that

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 11

time, he had already been disabled under the Plan's definition for more than six months, so the waiting period would not apply. Therefore, the Court orders defendant to pay plaintiff benefits as of January 1, 2008.

Plaintiff has also requested an award of attorney's fees and costs. See, e.g., United Steel Workers of Am. v. Ret. Income Plan for Hourly-Rated Employees of ASARCO, Inc., 512 F.3d 555, 564 (9th Cir. 2008) (explaining that as a "general rule, the prevailing party on an ERISA claim is entitled to attorney's fees, unless special circumstances would render such an award unjust."). In this case, plaintiff requested an award of fees in his response memorandum, and defendant, in its reply, did not identify any factors that would make an award unjust. Nor does the record reveal any such factors. Accordingly, the Court awards plaintiff his attorney's fees in prosecuting this case. Plaintiff's counsel shall submit a memorandum and declaration setting forth those fees and costs within thirty days of the date of this order.

### III.  CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant's motion for summary judgment (Dkt. #11) and GRANTS summary judgment in plaintiff's favor. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant.

DATED this 18th day of January, 2011.

Robert S. Lasnik
United States District Judge

ORDER GRANTING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR- 12